**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|                                    |   |                                    |
|------------------------------------|---|------------------------------------|
| ALEX T. MCKAY,                     | : | Civil Action No. 10-0888 (JBS)     |
|                 Plaintiff,         | : |                                    |
|                                    | : | **MEMORANDUM OPINION AND ORDER**   |
|         v.                         | : |                                    |
|                                    | : |                                    |
| DEPARTMENT OF JUSTICE et al.,      | : |                                    |
|                                    | : |                                    |
|                 Defendants.        | : |                                    |

  This matter comes before the Court upon Plaintiff's filing of an amended complaint, see Docket Entry No. 2, and his submission of in forma pauperis application, see Docket Entry No. 1-1, it appearing that:

1.  Plaintiff initially submitted his original civil complaint, which arrived accompanied by Plaintiff's duly executed in forma pauperis application. See Docket Entry No. 1. In its caption, the original complaint named, as Defendants in this matter, the following individual and/or entities: (a) "the United States Department of Justice"; (b) "Eric M. Holder"; (c) "the Federal Bureau of Prisons et al."; and (d) "H. Watt." Id. at 1. The body of the original complaint, however, indicated that Plaintiff wished to assert claims only against two Defendants, Eric M. Holder ("Holder") and H. Watts ("Watts"), and Plaintiff's references to the "Department of Justice et al.," and "Federal Bureau of Prisons et al." were made as designations of Messrs. Holder

and Watts' employ. See id. at 3-4.  The original complaint further clarified that Plaintiff believed Holder was liable to Plaintiff because "[Holder's] Office created policies of which all must be held accountable [since Holder was] the top manager of the Department of Justice, [so] he [was] responsible to ensure adherence to such policies." Id. at 4.  As to Watts, Plaintiff asserted Watts' liability on the grounds that Watts was an "administrative policy coordinator," the title from which Plaintiff apparently deduced liability for "denial of adherences [sic] to policies which allow the violations [that were asserted] in this [original] complaint." Id.  The "Statement of Claim" provided in the original complaint, however, did not assert a single fact and was limited to a string of rhetoric and generalities expressing Plaintiff's disappointment with lack of enforcement of certain policies that Plaintiff read as favorable to his cause.  See id. at 5.

2. Plaintiff later submitted his amended pleading, see Docket Entry No. 2, an eighteen-page document, which this Court construes as a supplement to Plaintiff's original complaint. See id.  This supplement, read liberally, alleges that Plaintiff, while being employed at his correctional facility, was initially qualified for a certain "PG-4" employment grade (and corresponding payment), but –- sometime in August 2009 -- was promised by unspecified

officials that he would be promoted to a higher position (that corresponded to a higher pay rate). See generally, id. "On September 10, 2009, when [his] pay was posted to [his prison] account[, Plaintiff] discovered that this approved raise had not been monetary enumerated, as contracted." Id. at 2. It appears that Plaintiff now seeks the difference in pay that he actually received for his employment and the one he, allegedly, was promised.[1] See id. at 5, 11.

3. The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous,[2] malicious, fails to state a claim upon which relief may be

---

[1] It also appears that Plaintiff, upon his inquiry as to why he was not given the promotion (and the accompanying pay raise), was told that the prison system (or his particular prison facility) was experiencing budgetary constraints, and the currently existing tight budget prevented the raise (and, seemingly, the promotion). See Docket Entry No. 2.

[2] A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint as "frivolous" is an objective one. See Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). Thus, the Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id. Recently, the Supreme Court further clarified the standard for summary dismissal in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center. The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled

4

to relief." Fed. R. Civ. P. 8(a)(2). Citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n] that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

<u>Iqbal</u>, 129 S. Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court . . . can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.

<u>Id.</u> at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. See id. at 1949-50; see also Twombly, 550 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that applied to federal complaints before Twombly.[3] See Fowler, 578 F.3d at 210.

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in Iqbal, "[w]here the

---

[3] Under Conley, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Under this "no set of facts" standard, a complaint could effectively survive [dismissal] so long as it contained a bare recitation of the claim's legal elements.

> well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler, 578 F.3d at 210-211 (citations omitted). Moreover, the Iqbal Court clarified that a government official sued in his/her individual capacity for alleged constitutionally tortious behavior cannot be held liable on a respondeat superior theory or on the basis of some general link to allegedly responsible individuals or actions. See Iqbal, 129 S. Ct. at 1948-49 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior . . . . [A] plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution. . . . [P]urpose rather than knowledge is required to impose [constitutional] liability on . . . an official charged with violations arising from his or her superintendent responsibilities"); accord, e.g., Richards v. Pennsylvania, 196 Fed. App'x 82, 85 (3d Cir. 2006) (the court, in Section 1983 action alleging excessive force in arrest, agreed with a magistrate judge that plaintiff's "failure to allege personal involvement on the part of defendant [who was the deputy warden] proved fatal to

[plaintiff's] claims"); Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) ("[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" in order to be liable) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)); Johnstone v. United States, 980 F. Supp. 148, 151-52 (E.D. Pa. 1997) (court sua sponte dismissed claims against government official because "there is no indication" that the officer "had any personal involvement in the alleged constitutional deprivations," and plaintiff therefore could not "prove any set of facts that would entitle him to relief against [the officer]").

4. It is evident that Plaintiffs' claims against the named Defendants, that is, Holder and Watts, are based on nothing but these Defendants' supervisory positions; indeed, Plaintiff neither asserted nor, it seems, can assert any fact showing purposeful personal involvement by either one of these Defendants.  Therefore, his allegations against Holder and/or Watts are subject to dismissal.  See Iqbal, 129 S. Ct. at 1948-49.

5. The Court, however, being mindful of the Supreme Court's observation that, "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

    the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given,'" Foman v. Davis, 371 U.S. 178, 182 (1962), is obligated to address the issue of whether the shortcomings of Plaintiff's pleadings could be cured by a re-amendment or whether grant of leave to re-amend would be futile. "In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). As the following demonstrates, Plaintiff's allegations, even if re-amended (by naming the prison officials who allegedly promised Plaintiff a promotion and raise), would still be subject to dismissal.

6. In Bivens, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Correctional Services Corp. v. Malesko, 534 U.S. 61, 66 (2001). However, since it is long established that "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner," Sandin v. Conner, 515 U.S. 472, 478 (1995), Plaintiff's employment-related allegations do not state a claim: prisoners have no protected liberty or property interest in retaining prison employment (moreover, in employment promotion). See Bulger v. United States

Bureau of Prisons, 65 F.3d 48 (5th Cir. 1995) (federal inmate has no liberty or property interest in a Federal Prison Industries Job assignment); James v. Quinlan, 866 F.2d 627 (3d Cir. 1989) (same); Garza v. Miller, 688 F.2d 480, 486 (7th Cir. 1982). Therefore, Plaintiff's allegations asserting denial of promotion fail to state a claim upon which relief can be granted.

7. Moreover, even if this Court were to read Plaintiff's pleadings as asserting a pure breach of contract claim (i.e., by focusing not on the alleged promotion but on the alleged promise to pay higher wages), Plaintiff's claim to that effect would still have to be dismissed. The United States Court of Appeals for the Federal Circuit, the intermediate appellate court of controlling precedent on matters of contract with the United States, has ruled that agreements made by the United States will not provide *implied* monetary liability for breach, meaning that such liability might arise only "if there was an unmistakable promise to subject the United States to monetary liability." Sanders v. United States, 252 F.3d 1329, 1336 (Fed. Cir. 2001). Such an agreement would "require the same kind of express language [as is] required by the unmistakability doctrine concerning government liability for the exercise of sovereign power." Id. Here, Plaintiff's complaint do not

suggest, even vaguely, that the prison officials at his place of confinement expressly made statements unmistakably establishing that they were intending to subject themselves (or the United States government, or any agency thereof) to monetary liability for a breach of the alleged promise to give Plaintiff for a pay raise.  In light of the foregoing, it appears futile to allow Plaintiff an opportunity to amend his pleadings by naming alternative defendant(s), and the Court is constrained to dismiss the pleadings with prejudice.

IT IS on this  **6th**   day of   **May**  , **2010**,

**ORDERED** that the Clerk of the Court is directed to file the complaint in the above-captioned action; and it is further

**ORDERED** that Plaintiff's application to proceed in this matter in forma pauperis is **GRANTED,** and Plaintiff is assessed a filing fee of $350.00 and shall pay the entire filing fee in the manner set forth in this Order pursuant to 28 U.S.C. § 1915(b)(1) and (2), regardless of the outcome of the litigation; and it is further

**ORDERED** that in each month that the amount in Plaintiff's account exceeds $10.00, until the $350.00 filing fee is paid, the agency having custody of Plaintiff shall assess, deduct from Plaintiff's account, and forward to the Clerk of the Court payment equal to 20% of the preceding month's income credited to

Plaintiff's account, pursuant to 28 U.S.C. § 1915(b)(2), and each payment shall reference the civil docket number of this action; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Memorandum Opinion and Order by regular mail upon the United States Attorney for the State of New Jersey and on the warden of the place of Plaintiff's current confinement; and it is further

**ORDERED** that the complaint, Docket Entry No. 1, is **DISMISSED**, with prejudice, for failure to state a claim upon which relief can be granted; and it is further

**ORDERED** that the Clerk shall serve this Memorandum Opinion and Order upon Plaintiff by regular U.S. mail; and it is finally

**ORDERED** that the Clerk shall **CLOSE** the file on this matter by making a new and separate entry on the docket reading "**CIVIL CASE CLOSED**".

          **s/ Jerome B. Simandle**
          Jerome B. Simandle
          United States District Judge